1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Parnell Curtis,

        Plaintiff,

vs.

Buckley, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 1:06-CV-00230-SMM

**ORDER**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him for testifying on behalf of a fellow inmate and filing a complaint against a correctional officer. Before the Court is Defendants' Motion for Summary Judgment. (Doc. 91). Plaintiff responded (Doc. 97) and Defendants replied (Doc. 102). Having reviewed the arguments and evidence of both parties, the Court will grant Defendants' motion.[1]

**BACKGROUND**

Plaintiff Parnell Curtis ("Plaintiff") is an inmate currently incarcerated in the California State Prison-Sacramento. (Defendants' Statement of Facts ("DSOF") ¶ 1). At the

---

[1]Neither Plaintiff nor Defendants requested oral argument.  The parties have had opportunity to brief the issues, and the Court finds the action suitable for decision without oral argument. See LRCiv. 230(g).

1   time of the events at issue in this case, Plaintiff was incarcerated in the Security Housing Unit

2   (SHU) at the California State Prison-Corcoran ("Corcoran"). Defendants Alvarez and Munoz

3   ("Defendants") are retired correctional officers who were assigned to Plaintiff's SHU at

4   Corcoran. (DSOF ¶ 2).

5        At issue in this case is the propriety of a cell search and property seizure conducted

6   on June 13, 2005. Plaintiff alleges that Defendants conducted this search and seizure in

7   retaliation for his testimony against fellow Corcoran correctional officer Robles ("Robles"),

8   who is not a Defendant in this suit. On September 11, 2004, Plaintiff testified as a witness

9   and assisted fellow prisoner Donald Glass ("Glass") in pursuing assault and battery claims

10  against Robles. (Plaintiff's Statement of Facts ("PSOF") ¶ 29); (Plaintiff's Deposition ("Pl.

11  Dep.") at 42). Later, on November 15, 2004, Plaintiff submitted a complaint to prison

12  officials alleging that Robles had threatened him and taken a "Computer Shopper" magazine

13  from his cell because he was helping Glass. (Id.). Plaintiff withdrew the claim in January

14  2005 after his magazine was replaced. (Id.).

15       Robles was transferred out of Plaintiff's unit approximately three months after

16  Plaintiff's testimony in September 2004. (Pl. Dep. at 43:1). At the time of that transfer,

17  Defendant Alvarez ("Alvarez") was assigned to Plaintiff's unit. (Id. at 43:2-7). Plaintiff had

18  occasional interaction with Alvarez between Alvarez's assignment and the June 13, 2005

19  search but the two never discussed Plaintiff's experience with Robles or Plaintiff's testimony

20  against Robles. (Id. at 45:4-6, 69:1-19). In fact, at no point before or during the June 13

21  search did either Defendant mention Plaintiff's interaction with Robles months earlier. (Id.

22  69:1-19).

23       Under California regulations, correctional officers, including Defendants, are required

24  to frequently search the cells of inmates at Corcoran to look for contraband. (Alvarez

25  Declaration ("Alvarez Decl.") ¶ 2); Cal. Code Regs. ("CCR") tit. 15 § 3287(a) (2006). These

26  cell searches are conducted more frequently for inmates in the SHU. CCR tit. 15 § 3287

27  (a)(1). An inmate's presence is not required during such searches, and, for administrative

28  convenience, searches are often conducted when inmates are in the yard and the cells are

1    unoccupied. Id. § 3287(a)(3) (Alvarez Decl. ¶ 2) . On June 13, 2005, Defendants determined

2    that Plaintiff's cell had not been searched during the month of June. (Id. ¶ 4). Plaintiff

3    acknowledges that his cell had not been searched since May 13, 2005. (Plaintiff's Response

4    ("Pl. Resp.") ¶ 8). Defendants entered Plaintiff's cell while he was in the yard and found a

5    clock radio and a television. (Id. ¶ 4, 6). Believing that the radio was not properly identified

6    as Plaintiff's, Defendants called the property officer who confirmed that the radio was not

7    registered to Curtis. (Id. ¶ 4). Defendants removed the clock radio, as well as an allegedly

8    altered coaxial cable, a torn blanket, two sheets, a pair of boxers, a clothesline, and some

9    fishing line. (Doc. 91-3, Exh. C). Defendants documented what they took from the cell,

10   turned the radio into the property officer, and disposed of the other items. (Id.; DSOF ¶ 19).

11           When Plaintiff returned from the yard he was brought to a holding cell where he was

12   provided documentation of the search and a trust withdrawal receipt charging him $21.50 for

13   the damage to the state-owned sheets, blankets, and boxers. (PSOF ¶ 25). Plaintiff asserts that

14   he refused to sign the certificate, and asserted that the radio belonged to him and the state

15   property was not damaged . (PSOF ¶ 26-29). Defendants allegedly threatened Plaintiff and

16   refused to allow him to return to his cell until he signed the certificate. (PSOF ¶ 25). When

17   Plaintiff questioned why Defendants were taking his property, Alvarez allegedly stated,

18   "thats [sic] what happens to inmates who rat on officers, saying they've seen an assault on

19   an inmate." (PSOF ¶ 29).  Plaintiff acknowledges that at no point during the attack did

20   Alvarez or Munoz mention Robles (Pl. Dep. at 69: 4-6, 18-20), but infers that Alvarez's "rat"

21   comment was motivated by his testimony. (Id. at 69:9).  Plaintiff signed the trust withdrawal

22   certificate. (DSOF ¶ 25).

23           Later the same day, Plaintiff filed a 602 Appeal to prison officials alleging that his

24   property had been taken in retaliation for the testimony he had given on behalf of Glass and

25   his complaint against Officer Robles. (PSOF ¶ 26). He alleged that the radio was his and that

26   the coaxial cable, blanket, sheets, and boxers had not been altered or damaged. (PSOF ¶ 26-

27   27). On appeal, Plaintiff was issued a new coaxial cable. He was also able to prove the radio

28   belonged to him; however, regulations limit an SHU prisoner to only a radio or a television.

1  CCR tit. 15 § 3190(j)(3). Plaintiff chose to keep his television, and the radio was mailed to

2  his home by a Corcoran property officer. (Doc. 97, Exh. CC) (DSOF ¶ 36).

3        On February 28, 2006, Plaintiff filed this action with the district court alleging First

4  Amendment, Fourteenth Amendment and negligence claims against numerous defendants.

5  (Doc. 1). All of Plaintiff's claims were later dismissed except his First Amendment

6  retaliation claims against Defendants. (Docs. 20, 24).

7                              **STANDARD OF REVIEW**

8        A court must grant summary judgment if the pleadings and supporting documents,

9  viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine

10 dispute as to any material fact and the movant is entitled to judgment as a matter of law."

11 Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.

12 Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines

13 which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also

14 Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit

15 under the governing law will properly preclude the entry of summary judgment." Anderson,

16 477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that

17 a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d

18 at 1130.

19       A principal purpose of summary judgment is "to isolate and dispose of factually

20 unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against

21 a party who "fails to make a showing sufficient to establish the existence of an element

22 essential to that party's case, and on which that party will bear the burden of proof at trial."

23 Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).  The

24 moving party need not disprove matters on which the opponent has the burden of proof at

25 trial.  See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not

26 produce evidence "in a form that would be admissible at trial in order to avoid summary

27 judgment." Id. at 324.  However, the nonmovant "may not rest upon the mere allegations or

28 denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is

1    a genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v

2    .Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53

3    F.3d 1044, 1049 (9th Cir. 1995).

4                                          **DISCUSSION**

5    **I. Retaliation Claims**

6           Prisoners have a constitutional right to be free from retaliation for participating in

7    "protected speech activities." Pratt v. Rowland, 65 F.3d 802, 806 & n.4 (9th Cir. 1995).

8    Protected speech activities include participating in established prison grievance procedures,

9    Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), and "pursu[ing] civil rights litigation

10   in the courts," Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995). Testifying on

11   behalf of a fellow inmate is part of pursuing litigation in the courts and is protected. CF. Raad

12   v. Fairbanks N. Star Borough School Dist., 323 F.3d 1185, 1194 (9th Cir. 2003). (noting, in

13   the employment context, that protected activity includes testimony regarding unlawful

14   practices). Because Plaintiff had a right to testify on behalf of his fellow inmate and to file

15   his own 602 complaint against Officer Robles, prison authorities cannot penalize him for

16   exercising this right.

17          To succeed on a claim of retaliation under 42 U.S.C. 1983 Plaintiff must show five

18   basic elements: "(1) An assertion that a state actor took some adverse action against an

19   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

20   the inmates exercise of his First Amendment rights, and (5) the action did not reasonably

21   advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.

22   2005).

23          Viewing all facts in the light most favorable to him, Plaintiff has shown: (1) he

24   engaged in protected conduct by testifying and filing a complaint against Robles; (2) an

25   adverse action in the form of the cell search and confiscation of his property; and (3) the

26   chilling of his First Amendments rights, Brodheim v. Cry, 584 F.3d 1262, 1272 (9th Cir.

27   2009) ("[P]laintiff does not have to show that his speech was actually inhibited or

28   suppressed, but rather that the adverse action at issue would chill or silence a person of

ordinary firmness from future First Amendment activities.")(citation omitted). Thus, primarily at issue here are the elements of causation and whether Defendants' actions were completed in pursuit of legitimate correctional goals.

In reviewing Plaintiff's claims, the Court must conduct its evaluation in light of concerns over "excessive judicial involvement in day-to-day prison management, which often squander[s] judicial resources with little offsetting benefit to anyone." Pratt, 65 F.3d at 807 (quoting Sandlin v. Connor, 515 U.S. 472, 482 (1995)). Therefore, Court must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penalogical reasons for conduct alleged to be retaliatory." Pratt, 65 F3d at 807.

**A. Causation**

To show causation, Plaintiff must show that his 'protected conduct' was the "substantial or motivating factor behind the defendant's conduct." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Therefore, at the summary judgment stage, Plaintiff must "put forth evidence of retaliatory motive, that taken in the light most favorable to him, presents a genuine issue of material fact as to intent." Broedheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003). To determine motivation, the Court looks to Defendants' knowledge of the protected activity, Defendants' conduct and statements, proximity in time between the protected activity and the adverse action, and the nature of the action. Soranno's, 874 F.2d at 1316; Schwartzman v. Valenzuela, 846 F.2d 1209, 1212 (9th Cir. 1988).

Plaintiff has shown that on September 11, 2004 he gave testimony against Officer Robles on behalf of a fellow inmate (PSOF ¶ 29), and that on November 15, 2004 he filed a complaint against Robles for taking a magazine from his cell (Doc. 97, Exh. BB). Plaintiff's argument for causation is based on his belief that Officer Alvarez was informed of his protected activity by Robles when he replaced him (Pl. Dep. at 43:3), combined with his assertions that the search was illegal, the confiscated radio was clearly marked as his, and the coaxial cable and the other state owned property were not altered or damaged. (Id. ¶¶ 26, 27). His argument is supported by Alvarez's alleged statement about inmates who rat on

1   prison guards (Id. ¶ 29) and the 602 complaint he filed with prison officials immediately after
2   the incident which alleged retaliation. (Id. ¶ 29).

3          Defendants argue that Plaintiff has failed to show that his protected activity was a
4   motivating factor behind their action. They submit that the June 13, 2005 search was an
5   inspection and seizure of contraband that happens to every SHU inmate on a routine basis,
6   that there is no evidence that Defendants knew about and acted on knowledge of Plaintiff's
7   protected activity, and that the timing and nature of the activity are insufficient to show an
8   effort to chill Plaintiff's First Amendment rights. (Alvarez Decl. ¶ 7).

9          When reviewing the causal connection between Defendants' actions and Plaintiff's
10  protected activity, the Court draws all reasonable inferences in Plaintiff's favor.  However,
11  a causal connection will be inferred not from one statement but from the cumulation of the
12  surrounding circumstances. For example, in Sorrano's, the Ninth Circuit reviewed 42 U.S.C.
13  § 1983 claims that a Pollution Control District had suspended Plaintiff's permits in retaliation
14  for Plaintiff's decision to speak out against regulations. 874 F.3d at 1312. The Court found
15  causation based (1) on the defendant's statement that he would "somehow get even" with
16  Plaintiff, (2) the timing of the suspension–it took place soon after the plaintiff spoke out
17  against the regulations, and (3) evidence that the defendants mailed the notice of suspension
18  to the plaintiff's customers with the intent of maximizing the harm inflicted upon the
19  plaintiff. Id. at 1315-16.

20         As in Soranno's, Plaintiff's evidence of retaliation includes Alvarez's alleged
21  statement, "[t]hats [sic] what happens to inmates who rat on officers, saying they've seen an
22  assault on an inmate!" See id. Such a direct expression of motivation is strong evidence of
23  retaliatory animus, particularly when Plaintiff concurrently alleges that Defendants
24  confiscated legitimate items, there are no photographs or other evidence to dispute such
25  contentions, and Plaintiff filed an appeal alleging retaliation the same day.

26         However, beyond Plaintiff's allegations, the timing and nature of the adverse action
27  do not support a finding of retaliatory animus to the same extent as in Soranno's. See id.
28  First, the nature of the search and seizure appears to have been routine. Searches of SHU

prisoners' cells are conducted on a frequent basis by regulation. This search was conducted thirty days after Plaintiff's cell had last been searched. Plaintiff received proper documentation of the search, items that were seized, and reasons for removing Plaintiff's property. Defendants have further shown that Plaintiff's radio was not registered with the property office as required.

Second, the circumstances surrounding Defendants' actions do not provide substantial evidence to support a finding of retaliatory motive. A lengthy period of time had passed between Plaintiff's protected activity and Defendants' actions. The June 13, 2005 search took place at least eight months after Plaintiff's testimony against Robles, and six months after his complaint against Robles for taking his magazine. There is also no evidence to suggest that Defendants had any relationship with Robles. Indeed, there is no evidence showing Defendants actually knew about Plaintiff's testimony and complaint, as Plaintiff acknowledges that Defendants had not worked with Robles nor did they work in Plaintiff's cell block at the time Plaintiff filed his complaint. Defendants had also interacted with Plaintiff on several occasions before the search and confrontation, and had never mentioned Robles or Plaintiff's testimony or complaint. Finally, in his deposition, Plaintiff admitted that Alvarez's actions may have been motivated simply because he is a "miserable person." ( Pl. Dep. 71:16-25).

The Court is thus left with Defendant's troublingly explicit statement of motivation, combined with facts and circumstances that provide little support for a finding of retaliatory motivation. If Defendant Alvarez searched Plaintiff's cell and seized his property because he is a "miserable person," for any other illegitimate reason unrelated to Plaintiff's testimony and complaint, or for any legitimate reason, he did not act "because of" Plaintiff's protected activity and summary judgment would be appropriate. However, the contradicting evidence in this case suffices to show that Plaintiff has met his burden to "put forth evidence of retaliatory motive, that taken in the light most favorable to him, presents a genuine issue of material fact as to intent." Broedheim, 584 F.3d at127. Thus, there is sufficient evidence of causation to preclude a grant of summary judgment on this element.

1

**B. Legitimate Correctional Goals**

2      Particularly important in the prisoner context, and also at issue here, is the fifth

3  element of the retaliation test, which requires that Plaintiff show that "the prison authorities'

4  retaliatory action did not advance legitimate goals of the correctional institution or was not

5  tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532; Pratt, 65 F.3d at

6  806 ("[Plaintiff] bears the burden of pleading and proving the absence of legitimate

7  correctional goals for the conduct of which he complains"). The Court's analysis of

8  penalogical justifications of Defendants' conduct is guided by the deference and flexibility

9  the Court is required to provide to prison officials in their management of day-to-day prison

10  activities. Pratt, 65 F3d at 807.  After a thorough analysis of the record in this case, it is clear

11  that Plaintiff has not shown that "there were no legitimate correctional purposes motivating

12  the actions he complains of." Pratt, 65 F.3d at 808.

13      First, Officers properly conducted a search of Plaintiff's cell.  Plaintiff was housed in

14  the prison's SHU, an area reserved for prisoners with violent and dangerous tendencies or

15  pasts. (DSOF 8). California regulations explain the policy for cell searches, describing them

16  as "necessary in order to detect and control serious contraband and to maintain institutional

17  security." CCR tit. 15 § 3287(2). Cell searches may be conducted when inmates are not

18  present. Id. § 3287(3). The regulations also provide that "more frequent inspections [] be

19  conducted in specialized housing units" such as Plaintiff's. Id. § 3287 (a)(1). Accordingly,

20  Defendant Alvarez declares that, at Corcoran, "it was protocol for SHU officers to routinely

21  search an inmate cell three times a month." (Alvarez Decl. ¶ 7). Plaintiff denies Alvarez's

22  contentions, arguing that cells are searched only every thirty days. (Citing Doc. 102, Exh. E--

23  California Department of Corrections, Operational Procedure # 200 which requires that cell

24  searches be conducted every thirty days in administrative segregation units). However,

25  Plaintiff's assertions are inapposite–the documentation he provides is not directly applicable

26  to SHU cell searches, and, in any case, Plaintiff admits that his cell had not been searched

27  for thirty days. Defendants also undisputedly provided Plaintiff with the cell search property

28  form as required. Thus, Plaintiff has not provided any evidence to dispute Defendants'

assertions that the search was a routine inspection of Plaintiff's cell in accordance with prison policy and state regulation.

Second, the removal of Plaintiff's radio had legitimate correctional goals. Plaintiff argues that Defendants removed the radio even though it was properly marked, that they did not speak with the property officer, and that a prison guard had previously allowed him to have both a radio and a television. These allegations do not create a dispute of fact with regard to whether correctional goals motivated Defendants' actions. Prisons such as Corcoran allow inmates to possess personal property on a limited basis determined primarily by an inmates assigned security level. CCR tit.15 § 3190. In the SHU inmates may "possess or acquire one television or one radio or one television/radio combination unit." Id. § 3190(j)(3). However, any personal property such as a radio or television "must be registered under the inmate's name and number and in the institution's inmate property records." Id. § 3191(a). An inmate's "possession of property which is not registered in the inmate's name and number will be cause for disciplinary action, including confiscation of the unregistered property." Id. § 3191(a). These provisions help to limit or prevent violent disputes over personal property within the prison.

Defendants have asserted that upon searching Plaintiff's cell they found an unmarked radio. (PSOF ¶ 16). Upon finding the radio, Alvarez called the property officer to determine if the radio was registered to Plaintiff and was informed it was not. (PSOF ¶¶ 17, 18). Plaintiff's unsubstantiated allegations that this conversation never took place are insufficient to create a dispute of material fact as Defendants provide Plaintiff's property registration sheet, which shows that no radio was registered to Plaintiff. (Doc. 91, Exh. E). Defendants provided Plaintiff with a cell search form detailing the reason for removal of the radio as "not his." (Doc. 91, Exh. D). The Court is persuaded that property disputes could easily result over unregistered personal property, and that there is a legitimate correctional goal in removing such property until its true owner can be ascertained. Thus, Defendants have provided a legitimate correctional purpose for their decision to remove Plaintiff's radio and Plaintiff has failed to bring that goal into dispute.

Third, Defendants had legitimate correctional goals in removing the altered coaxial cable, clothesline, fishing line, torn blankets, and torn boxers. Contraband subject to seizure includes "anything which is not permitted, in excess of the maximum quantity permitted, or received or obtained from an unauthorized source." CCR tit.15 § 3000. Plaintiff does not dispute that the clothesline and fishing line were properly removed as contraband under this definition. (Pl. Dep. 54:19-21, 55:6-8). Similarly, contraband is defined to include "any authorized item that has been altered." Wiideman v. Mustafaa, 2011 U.S. Dist. LEXIS 39173 at * 8 (E.D. Cal. March 30, 2011). Thus, although Plaintiff was allowed to have a coaxial cable in his cell, Defendants were justified in removing it if it was altered. The justification for this is clear–if prisoners were allowed to alter authorized items, prison officials would lose control of what was and was not allowed, potentially resulting in a loss of institutional control. Finally, regulations provide: "Inmates shall not intentionally destroy, damage, deface, alter or misuse state property.  To do so shall be cause for disciplinary action and the inmate may be charged for the cost of repair or replacement." Id. at § 3011. Protecting state property has both disciplinary and financial goals which are clearly legitimate.

Plaintiff asserts that the coaxial cable was not altered and that his blanket and boxers were not destroyed, and, therefore, Defendants' actions were intended to punish Defendant and were not intended to accomplish legitimate correctional goals. However, Defendants have provided the cell search sheet providing their reasons for removing the items and shown that Plaintiff's radio was not properly registered. (Doc. 91, Exh. D, E). Furthermore, contraband searches are clearly a part of "day-to-day prison management." In such areas, the Court must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penalogical reasons for conduct alleged to be retaliatory." Pratt, 65 F3d 802, 807 (9th Cir. 1995). Balancing this deference with the facts and circumstances of this case the Court finds that Defendants' actions advanced legitimate correctional goals.

## II.  Plaintiff's Conspiracy to Retaliate Claim

Defendants also move for summary judgment on Plaintiff's conspiracy to retaliate claim. To succeed on a conspiracy claim, Plaintiff must show (1) "an agreement or meeting

1   of the minds to violate constitutional rights" <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir.

2   2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41

3   (9th Cir. 1989), and (2) an actual deprivation of constitutional rights, <u>Hart v. Parks</u>, 450 F.3d

4   1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d

5   1121, 1126 (9th Cir. 1989)).

6          Most importantly, Plaintiff has failed to show that his constitutional rights were

7   violated as a result of Defendants' actions.  But Plaintiff has also failed to provide evidence

8   to suggest that Alvarez and Munoz ever had a "meeting of the minds to violate his

9   constitutional rights." <u>Woodrum v. Woodward County</u>, 866 F.2d 1121, 1126 (9th Cir. 1989).

10  Plaintiff offers nothing more than conclusory allegations that Munoz and Alvarez conspired,

11  and such allegations can not support a conspiracy to retaliate claim. <u>Id.</u> <u>see</u> <u>also</u> <u>Lockary v.</u>

12  <u>Kayfetz</u>, 587 F. Supp. 631 (N.D. Cal. 1984) (allegations of conspiracy must be supported by

13  material facts, not merely conclusory statements). Plaintiff admits in his deposition that

14  Munoz never spoke to him during the confrontation or threatened him if he would not sign

15  the trust withdrawal certificate. (Pl. Dep. 75:5). In fact, Munoz was allegedly standing

16  approximately 6 feet away when he signed the trust withdrawal, his only participation in the

17  entire project was the fact that he was in the room at the time of the confrontation. (Pl. Dep.

18  73:3, 75:5). As Plaintiff has failed to show either element of a conspiracy to retaliate claim,

19  the Court will grant summary judgment.

20  **III. <u>Qualified Immunity</u>**

21         As an alternative grounds to avoid liability, Defendants assert that they are entitled

22  to summary judgment on qualified immunity grounds. It is, however, clearly established law

23  in the Ninth Circuit that an individual has a right to exercise their First Amendment rights

24  free from retaliation by government employees. <u>Schroeder</u>, 55 F.3d at 461 (9th Cir. 1995).

25  Thus, had Defendants acted without legitimate penalogical justification, qualified immunity

26  would be an insufficient ground to grant summary judgment on Defendant's claims.

27  However, as Defendants did not abuse Plaintiff's First Amendment rights in this case, a

28  prolonged discussion of qualified immunity is unnecessary.

1

**CONCLUSION**

2      For the foregoing reasons summary judgment is appropriate on each of Plaintiff's

3 claims.

4      Accordingly,

5      **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc.

6 91) is **GRANTED**.

7      DATED this 24th day of June, 2011.

8

9

10                    Stephen M. McNamee
                 United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28